IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARCIUS CRUZ, | ) | |
| | ) | Case No. 24 C 4035 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| FOX SECURITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this matter before the magistrate judge on consent (D.E. 37), Plaintiff Marcius Cruz ("Cruz" or "Plaintiff") sued his former employer, Defendant Fox Security, Inc. ("Defendant"), alleging race-based discrimination and harassment, national origin-based discrimination and harassment, and retaliation in violation of Title VII of The Civil Rights Act of 1964 and the Illinois Human Rights Act; as well as race-based discrimination in violation of 42 U.S.C. § 1981 and defamation.[1] (D.E. 15; "Am. Complaint".) Before the Court is Defendant's Motion for Summary Judgment and Memorandum of Law in Support (D.E. 54; "Motion"). The Motion is now fully briefed.

---

[1] The Seventh Circuit has succinctly explained the legal claims Plaintiff alleges:

> Title VII prohibits employers from discriminating against a person with respect to her 'compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Under Section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right ... to the full and equal benefit of all laws ... as is enjoyed by white citizens[.]" 42 U.S.C. § 1981. Finally, the IHRA makes it a civil rights violation for any employer to discriminate against an employee, and Section 1983 empowers employees to sue individuals who are personally responsible for the deprivation of a constitutional right. 775 Ill. Comp. Stat. 5/1-101 et seq.; 42 U.S.C. § 1983.

*Gamble v. Cnty. of Cook*, 106 F.4th 622, 625 (7th Cir. 2024).

I.      **Legal Standard**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we construe all facts and draw all reasonable inferences in favor of the non-movant." *Upchurch v. Indiana*, 146 F.4th 579, 585–86 (7th Cir. 2025). To succeed on a summary judgment motion, the movant must "either point out that an essential element of [the nonmovant's] claim lacked evidence or present evidence of its own that negated an essential element of [his] claim." *Ellison v. United States Postal Serv.*, 84 F.4th 750, 759 (7th Cir. 2023). "If the moving party takes the former approach, the non-moving party must respond by offering evidence that would allow a reasonable trier of fact to find in that party's favor on the issue." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (internal citations and quotations omitted). The burden on the non-movant is not onerous:

> The nonmovant need not depose his own witnesses or produce evidence in a form that would be admissible at trial, but he must go beyond the pleadings (e.g., produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in his favor. Moreover, the non-movant need not match the movant witness for witness, nor persuade the court that his case is convincing; he need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact.

*Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019). But "generalized and unsupported allegations cannot create a genuine dispute precluding summary judgment," *Mitchell v. Exxon Mobil Corp.*, 143 F.4th 800, 808 (7th Cir. 2025) (internal citations and quotations omitted), and "[i]t is not [the] job ... of the district court ... to scour the record in search of a genuine issue of triable fact." *Li v. Fresenius Kabi USA, LLC*, 110 F.4th 988, 996 (7th Cir. 2024) (internal citations and quotations omitted).

2

II.       **Irregularities in the Parties' Submissions**

There are several irregularities in the Parties' summary judgment submissions, including multiple violations of the Northern District of Illinois Local Rules, and the Court addresses those issues before determining what the undisputed material facts are and proceeding to the merits of Defendant's Motion. Courts have discretion to "require strict compliance with their local rules," and the Seventh Circuit "give[s] a district court's interpretation of its local rules considerable weight." *Rongere v. City of Rockford*, 99 F.4th 1095, 1100-01 (7th Cir. 2024); *see also Johnson v. Accenture LLP*, 142 F.4th 536, 542 (7th Cir. 2025) (finding that district court was "well within its discretion to enforce Local Rule 56.1" where a party's "responses to the relevant facts were non-responsive, unsupported, or both"); *cf. Richardson v. Kharbouch*, 156 F.4th 849, 855-56 (7th Cir. 2025) (finding that where "[b]oth parties failed to adhere to the applicable rules and ran the substantial risk of their opponent's proposed facts being deemed admitted," the district court was within its discretion to "refrain[] from enforcing the local rules against [both parties]. As such, the court's decision benefitted [both].").

Defendant filed a Local Rule ("L.R.") 56.1(a) Statement of Undisputed Facts (D.E. 55; "Def. SOF"),[2] and Plaintiff filed an L.R. 56.1(b)(2) Response to Defendant's Statement (D.E. 59; "Pl. Resp. to Def. SOF") and an L.R. 56.1(b)(3) Statement of Additional Facts (D.E. 60; "Pl. SOAF"). In the first irregularity, Defendant did not respond to Plaintiff's Statement of Additional Facts, in violation of Local Rule 56.1(c), which states that "the movant shall serve and file ... a response to the LR 56.1(b)(3) statement of additional material facts ... that complies with LR 56.1(e)." L.R. 56.1(c)(2). Under Local Rule 56.1(e), "[a]sserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3). Because

---

[2] The Court notes that Defendant appears to have submitted a duplicate Statement of Facts, at docket entries 53 and 55.

3

Defendant did not respond to Plaintiff's Statement of Additional Facts, the Court will treat as undisputed the additional facts in Plaintiff's submission that are material and properly supported by affidavits, depositions, answers to interrogatories, or admissions on file, as specified below.

Second, in its Reply brief (D.E. 62; "Reply") Defendant did not respond to Plaintiff's assertion in his Response memorandum that "[b]ecause Defendant failed to respond to Plaintiff's Requests for Admission, those matters are deemed admitted and conclusively established for purposes of summary judgment." (D.E. 58; "Pl. Resp." at 9 n.1, citing Fed. R. Civ. P. 36(a)(3), (b).) Plaintiff cites repeatedly to his Requests for Admission ("RFAs") as "deemed admitted" evidence in support of his Statement of Additional Facts and his Response to Defendant's Statement of Facts, on the ground that Defendant did not respond to them. Under Rule 36, "[a] matter is admitted unless, within 30 days after being served [with a written request to admit], the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." F.R.C.P. 36(a)(3). Luckily for Defendant, despite the silence in its Reply, it mistakenly filed its answers to Plaintiff's RFAs on the docket in this case. (*See* D.E. 32; "Def. Resp. to Pl. RFAs".)[3] As such, the Court takes judicial notice of the fact that contrary to Plaintiff's representations, Defendant did respond to Plaintiff's RFAs, and the Court will not automatically deem Plaintiff's RFAs admitted under Rule 36.

Third, in several places, Plaintiff's Response to Defendant's Statement of Facts violates Local Rule 56.1(e)'s requirement that "[a] response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made. A response may

---

[3] On February 7, 2025, the Court issued an order in response to Defendant's filing its response on the docket advising the parties that "[w]ith regard to the Defendant's Answer to Plaintiff's Request for Admission (doc. # 32) filed, the Court advises that these types of materials are within the realm of discovery materials that parties should not be filing on the docket unless they are doing so in support of or in opposition to a request for judicial relief per recently amended Local Rule 26.3. Going forward, Defendant shall serve discovery requests and responses directly to counsel for Plaintiff and not file them with the Court." (D.E. 33.)

not assert legal arguments except to make an objection, including objections based on admissibility, materiality, or absence of evidentiary support." L.R. 56.1(e)(2). As with Plaintiff's Statement of Additional Facts, the Court will treat as undisputed those portions of Defendant's Statement of Facts that are material; properly supported by affidavits, depositions, answers to interrogatories, or admissions on file; and as to which Plaintiff did not properly respond, as specified below. *See* LR 56.1(e)(3).

Fourth, both parties assert multiple facts (in Defendant's Statement of Facts and Plaintiff's Statement of Additional Facts) that are not supported, or even relevant to, the evidence they cite purportedly in support of the assertion. Rather than recite each error and violation of the Local Rules, the Court will "disregard any asserted fact that is not supported ... by citation to the specific evidentiary material, including the specific page number, that supports it." L.R. 56.1(d)(2). With the parties' submissions sorted out, below are the material, properly supported facts in this case.

### III. Material Facts

Plaintiff was employed by Defendant as a security officer from March 30, 2023, through February 24, 2024 (Pl. Resp. to Def. SOF ¶ 1), at which point Defendant told Plaintiff he would be assigned to a new location. (D.E. 26; Def. Answer to Am. Compl. ("Answer") ¶ 32.) Defendant asserts that Robert Fox ("Fox"), Defendant's President and CEO, was "the sole decisionmaker" regarding Plaintiff's job assignments, but Fox testified that human resources employee Lorraine Davis ("Davis") was responsible for assigning Plaintiff to the new location. (Pl. Resp. to Def. SOF ¶ 3, citing Pl.'s Ex. B, Fox Dep. 45:17-23.) In his declaration, signed under penalty of perjury under 28 U.S.C. § 1746,[4] Plaintiff asserts the new location was "significantly farther from his

---

[4] Documents signed under penalty of perjury under 28 U.S.C. § 1746 "had the legal effect of affidavits" and may "provide[] evidence that could be considered on summary judgment to the extent that [his] factual assertions were within his personal knowledge and were otherwise admissible. *McDaniel v. Syed*, 115 F.4th 805, 813-14 (7th Cir. 2024) (applying rule to a *pro se* plaintiff's submissions under 28 U.S.C. § 1746).

5

home" than the previous location. (Pl. SOAF ¶ 4, citing Pl. Resp. to Def. SOF, Ex. C ("Cruz Decl") ¶ 10.)[5] Plaintiff's employment ended when he did not accept the new work assignment; he was not terminated for disciplinary reasons. (*Id.* ¶¶ 5-6.) Defendant has no record of performance issues or complaints from Plaintiff's supervisors. (*Id.*)

Plaintiff describes himself as "Caucasian, Hispanic/Latino, and Puerto Rican," while the majority of Defendant's employees are African American.[6] (Pl. SOAF ¶¶ 1, 3.) During Plaintiff's employment, he provided Defendant with the names and phone numbers of multiple "candidates" for positions, including Francisco Hernandez, a Hispanic man, for a position on July 7, 2023, and Hannah Gilliard, a Caucasian woman, for a position on July 19, 2023, but they were either never interviewed or contacted by Defendant, or were told they were overqualified. (*Id.* ¶ 11, citing Cruz Decl. ¶ 3.) The person who replaced Plaintiff in his position was African American. (*Id.* ¶ 5, citing Cruz Decl. ¶ 16.)

On January 29, 2024, Plaintiff's supervisor, Riette Woods ("Woods"), told him that "we don't need outsiders messing up what we have" and it was "hard for a [B]lack business." (*Id.* ¶¶ 6-7, citing Cruz Decl. ¶¶ 5-7.)[7] Plaintiff "informed Woods he believed her comments to be

---

[5] Neither party asserts Plaintiff's home address or the location at which Plaintiff worked or was assigned to work while he was employed by Defendant.

[6] Despite using the term "Black" in his declaration, Plaintiff uses the term "African American" in his briefing, Statement of Additional Facts, and Response to Defendant's Statement of Facts, and Defendant's Reply does so as well. For purposes of this opinion, the Court will use the term "African American" as it is used in the parties' summary judgment papers.

[7] The Court notes that the portions of Plaintiff's declaration recounting his conversations with Woods, and subsequently with Davis, are not hearsay, *i.e.*, statements made out of court and being offered for their truth. Fed. R. Evid. 801(c). Instead, the statements are admissible at the summary judgment stage as nonhearsay admissions of a party opponent because they were made by Defendant's employee on a matter within the scope of that relationship and offered against Defendant. *Rao v. J.P. Morgan Chase Bank, N.A.*, 153 F.4th 541, 553 (7th Cir. 2025), citing Fed. R. Evid. 801(d)(2)(D). *See also Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822-23 (7th Cir. 2011) (holding that statements the employer's human resources director made to the plaintiff were admissible evidence at summary judgment because "[i]nvolvement in the process leading up to the employment action at issue is enough to make an employee's statement an admission.").

6

discriminatory on the basis of race and ethnicity" (Am. Compl. ¶ 27), and subsequently "informed Human Resources through Ms. Davis that [he] felt as though [Woods'] comment was discriminatory and racially charged," "contributed to a hostile work environment and reflected racial and ethnic bias." (Pl. SOAF ¶¶ 6-7, citing Cruz Decl. ¶¶ 5-7.) Defendant's policies require investigations of complaints about discrimination or harassment. (*Id.* ¶ 20.) After January 29, Defendant began reducing Plaintiff's hours. (*Id.* ¶ 8, citing Cruz Decl. ¶ 9.) Defendant never conducted an investigation, and there is no written documentation of Plaintiff's complaint. (Pl. Resp. to Def. SOF ¶¶ 8, 12.) None of Defendant's employees submitted any written complaint of discrimination, harassment, or retaliation against Defendant during the time Plaintiff was employed there. (*Id.* ¶¶ 7, 9.)

III. Analysis

A. Plaintiff's Claims of Discrimination

"[T]o survive summary judgment" on "claims of racial [and national origin] discrimination under Title VII, Sections 1981 and 1983, and the IHRA," Plaintiff must "establish a dispute of material fact under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or more generally present enough evidence from which a reasonable jury could find that Defendant[] discriminated" against him because of his race or national origin. *Gamble v. Cnty. of Cook*, 106 F.4th 622, 625-26 (7th Cir. 2024). The Seventh Circuit has referred to this latter path as the *Ortiz v. Werner Enterprises, Inc*., 834 F.3d 760 (7th Cir. 2016), framework, under which "a court must determine whether, considered as a whole, the plaintiff's evidence would permit a reasonable factfinder to conclude that the plaintiff's protected characteristic 'caused the discharge or other adverse employment action.'" *Lohmeier v. Gottlieb Mem'l Hosp.*, 147 F.4th 817, 826 (7th Cir. 2025), quoting *Ortiz*, 834 F.3d at 765. Like the plaintiff in *Lohmeier*,

7

Plaintiff relies on both the *McDonnell Douglas* and *Ortiz* frameworks, and thus the Court will assess each. *See Lohmeier*, 147 F.4th at 826.

> Under the *McDonnell Douglas* burden-shifting framework:
>
> First, the plaintiff must make out a prima facie case of employment discrimination by showing he: (1) belongs to a protected class, (2) met the defendant's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees who were not members of his protected class. Second, if the plaintiff satisfies each element, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Finally, the burden then shifts back to the employee to show why the employer's explanation is pretextual.

*Saud v. DePaul Univ.*, 154 F.4th 563, 567-68 (7th Cir. 2025), internal citations and quotations omitted. Defendant does not contest the first element, but as to the second, Defendant argues that "no evidence demonstrates that Plaintiff met performance expectations [because] Defendant maintains no evaluations or disciplinary records showing superior performance." (Motion at 7.) This argument is ironic given that Defendant asserted in its Statement of Facts, and Plaintiff agreed, that Defendant "has no record of performance issues or complaints from [Plaintiff's] supervisors." (Def. SOF ¶ 6.) At a minimum, the absence of any disciplinary or performance issues during the 11 months Plaintiff worked for Defendant raises a genuine issue of material fact as to whether Plaintiff met Defendant's legitimate expectations.

As to the third element of the *McDonnell Douglas* prima facie case, Defendant argues that Plaintiff did not suffer an adverse employment action because his "reassignment and subsequent separation were the result of his refusal to take unwanted assignments, not termination." (Motion at 7.) But even if the alleged reduction in hours and relocation of Plaintiff's work did not constitute discharge or constructive discharge, employment actions like these, which Plaintiff presented evidence had "adverse effects on [Plaintiff's] work hours, compensation, and career prospects,"

8

present a genuine issue of material fact that Plaintiff suffered an adverse employment action. *Rabenhorst v. Noem*, 162 F.4th 856, 861 (7th Cir. 2025).

Nevertheless, Plaintiff does not present a prima facie case of discrimination under the *McDonnell Douglas* test because as to the fourth element, Plaintiff offers no evidence that similarly situated employees who were not members of his protected class were treated more favorably than him. Plaintiff contends that Defendant's African-American employees "had substantially more favorable work schedules," that their work schedules were not reduced, and that they were not required to work far from their homes, but Plaintiff provides zero evidentiary support for these claims. (Pl. Resp. at 5.) In fact, Plaintiff does not identify any employees who were similarly situated to him; he only asserts that two individuals – about whom Plaintiff presents no comparator evidence besides race – were either not interviewed or hired by Defendant. This is not enough to make out a prima facie case under *McDonnell Douglas*. *See Lohmeier*, 147 F.4th at 826 ("[w]hile congruence need not be perfect, the plaintiff needs to show that comparator employees were engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them") (internal citations and quotations omitted).

Turning then to the *Ortiz* framework, the Court "must determine whether, considered as a whole, the plaintiff's evidence would permit a reasonable factfinder to conclude that the plaintiff's protected characteristic 'caused the discharge or other adverse employment action.'" *Id*., quoting *Ortiz*, 834 F.3d at 765. This determination "start[s] and end[s] with the evaluation of pretext." *Vassileva v. City of Chicago*, 118 F.4th 869, 874 (7th Cir. 2024). In this case, Defendant contends that it has articulated a legitimate, non-discriminatory reason for Plaintiff's "separation" from the company: due to "staffing needs" or "operational requirements," Plaintiff was "routine[ly]

9

reassign[ed] ... consistent with its standard scheduling practices," but he "refus[ed] to work [the] assigned shifts," thus "constituting a voluntary separation." (Motion at 5-7; Reply at 2.)

Plaintiff argues that he has raised a genuine issue of material fact as to whether this reason was merely a pretext for discrimination. "To show pretext, a plaintiff must do more than simply allege that an employer's stated reasons are inaccurate; [he] must still have some circumstances to support an inference that there was an improper motivation proscribed by law." *Vassileva*, 118 F.4th at 874 (internal quotations and citations omitted). Conversely, "a plaintiff does not necessarily need to show that the explanation is factually untrue. Even a true fact can be a pretext if it was not the honest reason for the employer's action." *Paterakos v. City of Chicago*, 147 F.4th 787, 797 (7th Cir. 2025).

Plaintiff points out that "Defendant produced no contemporaneous documents, no schedules, client requests, or staffing records, substantiating any alleged 'operational need' for []his reassignment." (Pl. Resp. at 8.) By contrast, Plaintiff presents evidence of "scheduling changes, the distant work assignment, the discriminatory hiring practices, and the isolating 'outsider' remark" by his supervisor, which "taken together" would permit a reasonable factfinder to conclude Defendant discriminated against him on the basis of his race or national origin. (*Id*. at 6, 8.) Plaintiff has presented the following, properly supported facts in support of his argument:

- The majority of Defendant's employees are African American. (*Id*. at 5.)

- Plaintiff was replaced by an African-American employee. (*Id*.)

- Plaintiff felt his supervisor was referring to his race or national origin when she said "we don't need outsiders messing up what we have." (*Id*.)

- Defendant's policies require investigations of complaints about discrimination or harassment, but Defendant failed to conduct any investigation into Plaintiff's complaint to human resources about his supervisor's comments. (*Id*. at 9.)

10

- Plaintiff's work hours were reduced, and his job was transferred from his established work site to a location substantially farther from his home. (*Id.* at 5, 7.)

Furthermore, Plaintiff argues that Defendant's assertion in its Statement of Facts that there is no evidence Plaintiff met Defendant's legitimate expectations, despite its admissions to the contrary, shows pretext. (*Id.* at 7.)

An employer's violation of its own policies, failure to investigate an employee's claims of discrimination, "ambiguous or suggestive comments or conduct," or "shifting and inconsistent explanations for an adverse employment action" can support an inference that an employer's stated reason was a pretext for intentional discrimination. *See Murphy v. Caterpillar Inc.*, 140 F.4th 900, 915 (7th Cir. 2025); *Paterakos*, 147 F.4th at 797; and *Lohmeier*, 147 F.4th at 826. The Court agrees with Plaintiff that Defendant's shifting descriptions and explanations of Plaintiff's work performance could support an inference of pretext. In addition, although Defendant insists it did not violate its own policies because it received no written complaint of discrimination, nothing in Defendant's antidiscrimination policy conditions its investigations on having complaints in writing (*see* Def. SOF, Ex. E), so the failure to investigate a verbal complaint of discrimination by Plaintiff could violate the policy. Furthermore, the supervisor's statement to Plaintiff that "we don't need outsiders messing up what we have" and that it was "hard for a [B]lack business," viewed with the evidence that Defendant did ultimately hire an African-American employee as Plaintiff's replacement, might reasonably be considered more than a "stray comment" and as alluding to Plaintiff's protected class. *See Vichio v. US Foods, Inc.*, 88 F.4th 687, 693-94 (7th Cir. 2023) (in age discrimination case, holding that "a jury would be free to conclude that [the supervisor's comment about a "seasoned" candidate] was alluding to the candidate's age because she knew that [the employer] did not want to hire older employees," because "[a]fter all, [the employer] did not hire the 'seasoned' candidate and instead hired someone who was over 10 years younger").

11

Ultimately, while Plaintiff's evidence was on the sparse side, when considering the evidence as a whole and construing all facts and drawing all reasonable inferences in favor of Plaintiff, as the Court must on summary judgment, the Court finds Plaintiff has offered evidence permitting a reasonable inference of pretext, such that a reasonable factfinder could conclude Plaintiff's employment with Defendant ended because of his race or national origin. Accordingly, summary judgment as to Plaintiff's discrimination claims is denied.

B.      **Plaintiff's Claims of Retaliation**

Plaintiff contends that he engaged in Title VII protected activity "when he orally reported [Woods'] discriminatory remarks to Lorraine Davis in human resources, expressly identifying the comments as discriminatory and racially charged." (Pl. Resp. at 10-11.) "For a Title VII retaliation claim to survive summary judgment, a reasonable jury must be able to find that: (1) [the plaintiff] engaged in Title VII protected activity; (2) []he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lohmeier*, 147 F.4th at 829. The Court has already found that Plaintiff demonstrated a genuine issue of material fact that he suffered an adverse employment action. The Court thus addresses the remaining two factors of Plaintiff's retaliation claim.

With regard to the first factor, Defendant summarily claims that "Plaintiff never complained to any supervisor" (Motion at 7), "cannot identify any protected complaint to Defendant or any management official" (*id.* at 10), and that "Plaintiff never lodged any contemporaneous internal complaint with management or HR" (Reply at 3). Defendant also states that "[t]he record contains no evidence of any formal complaint, report, or protected opposition activity." (Motion at 7.) As explained above, however, Plaintiff's declaration attesting that he complained orally to Davis after Woods uttered discriminatory and racially charged comments to

12

him (and before his separation from the company) is evidence that he lodged an internal complaint with human resources. Title VII protected activity need not be couched as a "formal" complaint or report; "an informal complaint may constitute protected activity for purposes of retaliation claims." *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011). *See also McHale v. McDonough*, 41 F.4th 866, 871-72 (7th Cir. 2022).

Defendant, refusing to acknowledge that Plaintiff presented a genuine issue of material fact that he complained to human resources, never actually challenges whether Plaintiff's complaint to Davis would constitute Title VII protected activity. Title VII "prohibits an employer from discriminating against employees or applicants for employment because they have complained of race discrimination." *Upchurch*, 146 F.4th at 585. In the absence of any evidence to the contrary, the Court finds that Plaintiff has demonstrated a genuine issue of material fact that he had "a sincere and reasonable belief that [he] [was] challenging conduct that violates Title VII," and thus that he engaged in a protected activity. *Brooks v. City of Pekin*, 95 F.4th 533, 540 (7th Cir. 2024). *See also Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 635 (7th Cir. 2022) (the complaint about alleged discrimination must be a "step in opposition to a form of discrimination that [Title VII] prohibits.").

Defendant's argument that Plaintiff cannot show a causal link is similarly weak. "To show causation in the retaliation context, the protected activity need not be the only cause of the adverse action, but the plaintiff must be able to show the protected activity was a but for cause, meaning that the adverse action would not have happened without the activity." *Johnson*, 142 F.4th at 543 (internal quotations omitted). Evidence of retaliation may include "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Id.* "Suspicious timing alone ... is generally insufficient to establish a retaliatory motivation," but "[o]ccasionally, ... an adverse

13

action comes so close on the heels of a protected act that an inference of causation is sensible." *Upchurch*, 146 F.4th at 589. "The decisionmaker for the relevant adverse action must know about the earlier protected activity for an inference of retaliation to attach." *Id*.

Despite the countervailing evidence presented by Plaintiff and reviewed by the Court above, Defendant concludes that "the record is devoid of any evidence that any alleged adverse action was causally connected to any protected activity – Plaintiff has produced no evidence that any decision makers were aware of any protected activity, any alleged adverse action occurred after any protected activity, Plaintiff has been treated the same as the other employees and there is no evidence of pretext." (Motion at 10.) To review, Plaintiff has raised a genuine issue of material fact that within a few weeks of complaining about racial discrimination to Davis in human resources – the person whom Fox testified was responsible for reassigning Plaintiff to a new work location – Defendant reduced Plaintiff's hours and reassigned him to a worksite substantially farther from his home. Plaintiff has also offered evidence of pretext in that Defendant "gave inconsistent accounts of who made the reassignment decision," between Fox's deposition and Defendant's Statement of Facts. (Pl. Resp. at 9, 11.) The Court finds that Plaintiff has presented sufficient evidence to "permit a reasonable jury to draw a causal link between [Plaintiff's] complaints of race discrimination and the adverse actions underlying his claims" to reach a jury on his retaliation claims. *Upchurch*, 146 F.4th at 587.

## IV. Plaintiff's "National-Origin Based Harassment" Claims

In his Amended Complaint, Plaintiff includes one count of "national-origin based harassment" under Title VII and the IHRA, which he states was "severe or pervasive" and "offensive subjectively and objectively." (Am. Compl. ¶¶ 128, 131.) The Court presumes, as Defendant does (Motion at 9), that Plaintiff meant to raise a national-origin based hostile work

14

environment claim.[8] "As in previous sections, the applicable Title VII and IHRA standards are the same." *Rongere*, 99 F.4th at 1105. "To successfully prove a claim for race-based hostile work environment, [Plaintiff] must establish that: "(1) he was subject to unwelcome harassment; (2) the harassment was based on [his] race; (3) the harassment was severe or pervasive so as to alter the conditions of [his] work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Jones v. Das*, – F.4th –, 2026 WL 172619, at *3 (7th Cir. Jan. 22, 2026) (internal citations and quotations omitted). Severe or pervasive means that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. at *4.

Plaintiff appears to have given up on this claim as he does not mention it at all in his Response, other than briefly stating that Defendant's actions "contribut[ed] to the discriminatory environment where Plaintiff was singled out on the basis of his protected classes." (Pl. Resp. at 5.) He was right to give up on this claim. As Defendant points out (Motion at 9), Plaintiff presents no evidence that Defendant's harassing actions extended beyond Woods' alleged statements. Accordingly, the Court grants Defendant's motion for summary judgment on this claim.

V. **Plaintiff's Defamation Claims**

Plaintiff contends that Defendant is liable for defamation because "Kevin Fox, the owner's brother, and an employee at the time, falsely told an LSG employee, Chris, that Plaintiff was 'terminated for sexual harassment,'" a statement that Kevin Fox "should have known ... was false, given his relationship with the owner of Defendant and his knowledge of Plaintiff's termination."

---

[8] In the Amended Complaint, Plaintiff summarily states that "Defendant subjected Plaintiff to a hostile work environment on the basis of ethnicity, national origin, and race, violating Title VII and Section 1981" (Am. Compl. ¶ 17), but Plaintiff does not allege a separate hostile work environment claim.

15

(Pl. Resp. at 14.) Plaintiff relies entirely on his declaration as evidence for his claims of defamation, and his assertions in his Statement of Additional Facts and his Declaration are essentially identical to the quote above from his Response brief. (*See* Pl. Resp. at 14, citing Cruz Decl. ¶¶ 14-22; *see also* Pl. SOAF, citing Cruz Decl. ¶¶ 19, 21, 22.)[9] Plaintiff never attempts to identify what "LSG" is, how he learned about a conversation between an LSG employee and Fox's brother, or how Fox or Defendant knew about statements made by Fox's brother, whose position as Defendant's employee Plaintiff also does not explain.

"In Illinois, a defamation claim requires evidence that the defendant made a false statement about the plaintiff, which the defendant published to a third party, and that damages resulted." *Jones v. Lake Cnty. Sheriff's Off.*, 154 F.4th 538, 547-48 (7th Cir. 2025) (internal citations and quotations omitted). But the only evidence Plaintiff relies on to show defamation is inadmissible hearsay that cannot sustain his defamation claims. Unlike the evidence Plaintiff offered in his declaration about conversations he had with Woods and Davis, *see* n.6, *supra*, Plaintiff's evidence of alleged false statements is akin to that which the Seventh Circuit found inadmissible in *Schindler v. Seiler*, 474 F.3d 1008, 1011 (7th Cir. 2007), where the plaintiff "failed to present testimony from any individual who personally heard the individual make the defamatory statements," and to the evidence found inadmissible in *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003), overruled on other grounds by *Ortiz*, where the plaintiff's evidence as to defamation "rel[ied] on a chain of employees who heard the statements from yet other employees." *Rao*, 153 F.4th at 554, distinguishing *Schindler* and *Haywood*. In fact, Plaintiff does not even attempt to present "a chain" of evidence, as he does not allege how he learned of the allegedly false statement or how an

---

[9] As explained above, the Court disregards Plaintiff's reliance on his RFAs as "deemed admitted," because Defendant responded to them, and, in fact, specifically denied Plaintiff's statements that Defendant communicated to third parties that Plaintiff was terminated for sexual harassment. (*See* Def. Resp. to Pl. RFAs ¶ 11.)

16

unidentified employee of an unidentified entity was connected to Defendant. By contrast, Defendant supports its argument that Plaintiff has not raised a genuine issue of material fact as to defamation with its verified interrogatory response denying that Defendant or any of its employees ever made a statement that Plaintiff was terminated for sexual harassment. (Motion at 9, citing Def. SOF, Ex. C, Def. Resp to Plaintiff's Interrogatory No. 23.) Moreover, the only deposition testimony offered by Plaintiff supports Defendant's version of the evidence, in that both Fox and Defendant's employee Mitchell Mohead denied having any knowledge of any statements made connecting Plaintiff to sexual harassment. (Pl. Resp. to Def. SOF, Exs. C and D.) Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's defamation claims.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (D.E. 54) is denied in part and granted in part. The Motion is denied as to Plaintiff's claims of discrimination and retaliation, and the Motion is granted as to Plaintiff's claims of defamation and harassment. The Court sets this case for a status hearing at 10:30 a.m. on February 19, 2026. The parties should come prepared with their availability for a late spring or early summer trial date.

**SO ORDERED.**

                                              **ENTER:**

                                              **GABRIEL A. FUENTES**
                                              **United States Magistrate Judge**

**DATED: February 10, 2026**